UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 22-CR-96

SERGIO S. EMERSON,

        Defendant.

## ORDER REGARDING CONTEMPT

On March 31, 2023, the Court issued an order directing the Attorney General or his designee to show cause why he should not be held in contempt for failing to comply with the Court's Order for Commitment of March 13, 2023. Dkt. No. 22. That Order had directed the Attorney General to place Defendant Sergio S. Emerson in a suitable facility within fifteen days where he could be provided mental health treatment to restore his competency to proceed to trial. Dkt. No. 18. Emerson, who is charged with possession of a firearm by a felon and failing to register as a sex offender, had been found incompetent and committed to the custody of the Attorney General for placement in such a facility on September 27, 2022. Dkt. No. 14. The statute under which Emerson was committed allows for a four-month hospitalization to determine whether he is likely to regain his competency in the future. 18 U.S.C. § 4241(d)(1).

On March 2, 2023, after five months had passed and Emerson was still in a county jail and had not been placed in a suitable placement, Emerson's attorney filed a motion to dismiss or, alternatively, to order his placement within seven days. Dkt. No. 15. Following a hearing on counsel's motion, the Court ordered the Attorney General or his designee to place Emerson in a

suitable facility within fifteen days. Dkt. No. 18. When Emerson had still not been placed in a suitable treatment facility within that time, counsel filed a second motion to dismiss. Dkt. No. 19. By the time of the hearing on counsel's second motion to dismiss, two days later, Emerson was in the process of being moved to a treatment facility. Based on that fact and the Court's concern for the safety of the public, counsel's motion to dismiss was denied. Because it nevertheless appeared clear that the Attorney General or his designee had violated its Order for Placement, the Court ordered that cause be shown as to why they should not be held in contempt. Dkt. No. 22. As the Court explained in its Order to Show Cause, "[t]he intentional violation of a court's order is not a trivial matter." *Id.* at 6.

In response to the Court's order, the Government has offered its apology for failing to comply in a timely manner with the court's order. Dkt. No. 23. at 1. Attached to the Government's response is a Declaration of Dia B. Boutwell, Ph.D., the Chief of the Psychological Evaluations section of the Psychology Services Branch of the Bureau of Prisons (BOP), in which Dr. Boutwell describes the placements available for defendants committed for competency restoration and the staffing shortages that have created significant delays in the placement of such defendants. Dkt. No. 23-1. Dr. Boutwell also describes in her declaration the symptoms and behaviors that Emerson was exhibiting and that made his placement in a suitable facility more difficult. *Id.* ¶¶ 22, 26. "[A]fter a full vetting of the matter and with consultation with other BOP peers and colleagues," Dr. Boutwell states, "I concluded the agency could not justify expediting Emerson over other defendants in front of him in the pipeline, some of whom had been waiting for a placement for nearly a year." *Id.* ¶ 27. This conclusion, Dr. Boutwell explains, "was not made lightly and no disrespect to the Court or its Order was intended." *Id.* She states that the BOP should have complied with the order or better communicated with the United States Attorney's Office

2

regarding the challenging circumstances the BOP faced and the defendant's disruptive conduct that made compliance more difficult. In addition to her regrets for not taking this approach, Dr. Boutwell expresses her commitment to doing so in the future. *Id.*

Counsel for Emerson contends that Dr. Boutwell should be held in contempt notwithstanding her explanation of the difficulty she faced and the commitment she expressed to complying in the future or, if unable to, better communicating with the United States Attorney so that an explanation can be provided why additional time is needed or compliance is not possible. Dkt. No. 24. Counsel quotes Dr. Boutwell's admission that "I concluded the agency could not justify expediting Emerson over other defendants in front of him in the pipeline, some of whom had been waiting for a placement for nearly a year." *Id.* at 1 (quoting Boutwell Decl. at ¶ 27). "In other words," counsel contends, "Dr. Boutwell specifically and intentionally decided to not follow the Court's order." *Id.* Quoting the Ninth Circuit's decision in *United States v. Donnelly*, 41 F. 4th 1102, 1108–09 (9th Cir. 2022), and this Court's Order for Placement, counsel argues, "the BOP's failure to allocate adequate agency resources is also not a legitimate excuse for intentionally failing to follow this Court's orders. Based on the BOP's actions and Dr. Boutwell's declaration, counsel asserts that the Court should hold Dr. Boutwell in contempt. Dkt. No. 24 at 2.

The question before the Court is whether Dr. Boutwell should be found in criminal contempt for willfully violating the Court's order. Criminal contempt is distinguished from civil contempt in that "the purpose of the former is primarily to punish for actions already taken while the latter intends to coerce for prospective compliance." *Pabst Brewing Co. v. Brewery Workers Local Union No. 77, AFL-CIO*, 555 F.2d 146, 149 (7th Cir. 1977). "Both imprisonment and a fine may be imposed to achieve these results." *Id.* To determine which kind of contempt is at issue one must ask "what does the court primarily seek to accomplish by imposing sentence?" *Id.*

3

Because compliance with the Court's Order of Placement has already been achieved, the only purpose for finding Dr. Boutwell in contempt would be to punish her for failing to comply with the Court's order earlier.

"Criminal contempt is a sui generis proceeding to vindicate the authority of the court and the integrity of its proceedings." *In re Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO Local 248*, 402 F. Supp. 725, 736 (E.D. Wis. 1975). Criminal contempt in federal courts is governed by 18 U.S.C. § 401. As relevant here, that section provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> * * *
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Rule 42(a) of the Federal Rules of Criminal Procedure sets out the procedural requirements for resolving criminal contempt cases where, as here, the alleged contempt occurs outside the presence of the court. That Rule affords the person accused the right to notice and a trial; it also requires the court to appoint a prosecutor. Fed. R. Crim. P. 42(a)(1)–(2).

Taking into consideration the facts and circumstances of this case, the Court concludes that no further action is needed. The Court is satisfied that compliance with its Order for Placement now having been achieved and based on the Government's and Dr. Boutwell's response to the Court's Order to Show Cause, a criminal contempt procedure against Dr. Boutwell would not be an appropriate response. In reaching this conclusion, the Court places great weight on the fact that Emerson has now been moved to an appropriate placement and the BOP has now complied with the Court's order. The Court has also carefully considered the difficulties the BOP faced in

complying with the order, and the Government's acknowledgment that it failed to fully recognize those difficulties and seek appropriate relief from the Court. Dkt. No. 23 at 1.

The Court is also concerned over the difficult position in which its order and the Ninth Circuit's decision in *Donnelly* have placed the BOP in general and Dr. Boutwell and her staff in particular. Because of staffing and restoration bed shortages, there are more defendants under commitment orders than there are restoration beds available. The BOP has taken significant steps to alleviate the shortages but doing so takes time. Boutwell Decl. ¶¶ 13–14. As Dr. Boutwell explains in her declaration, placements in treatment restoration beds are typically made on a first-come, first-served basis. As a result of the *Donnelly* decision, however, restoration beds must now be held for individuals under commitment orders from district courts in the Ninth Circuit and those courts in other circuits that have adopted the Ninth Circuit's analysis. As a result, those who have been waiting the longest and may be in greater need for treatment must be bumped and the BOP is prevented from performing the kind of triage common in the medical field when a mismatch exists between the number of patients in need of treatment and the resources available to meet those needs. *Id.* ¶ 11. These problems were compounded in Emerson's case by his disruptive and potentially aggressive behavior. *Id.* ¶ 27. Dr. Boutwell's failure to comply with the Court's order appears to have been motivated not by disrespect for the Court or its authority but by her efforts to fairly utilize the limited resources of her division to meet the needs of defendants under commitment orders from all of the districts her office serves. *Id.*

Had these difficulties and concerns been more clearly conveyed to the Court, it likely would have extended the time for Emerson to be placed or perhaps, given the alternative construction of § 4241(d) described in the Order to Show Cause, Dkt. No. 22 at 5, vacated the order altogether. In any event, Dr. Boutwell has acknowledged that the BOP "should have

5

Case 1:22-cr-00096-WCG   Filed 04/26/23   Page 5 of 6   Document 25

complied with the Order or better communicated with the United States Attorney's Office regarding these challenging circumstances" and is committed to "doing so in the future to ensure compliance with further Court orders." Boutwell Decl. ¶ 27. This response is sufficient to vindicate the important interests cited by the Court in the Order to Show Cause.

Finally, the Court has also considered the fact that the problem presented by this case is a systemic one. It is not unique to Emerson or this district and was not caused, so far as the record shows, by any decisions Dr. Boutwell has made. Nor can it be solved at once. For this reason, it would be unfair and counter-productive to impose criminal penalties on Dr. Boutwell under the circumstances presented. For all of these reasons, the Order to Show Cause is discharged.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of April, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge